UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTONIO FERNANDO CARSON, #193689,

    Plaintiff,

v.

    File No. 2:07-CV-45

    HON. ROBERT HOLMES BELL

GERALD RILEY and DAVID BERGH,

    Defendants.
_____/

# **O P I N I O N**

    This is a civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Antonio Fernando Carson, a prisoner in the Michigan Department of Corrections. On July 6, 2009, the Court conducted a non-jury trial on Plaintiff's claims that Defendants Gerald Riley and David Bergh violated his First Amendment right to the free exercise of religion, and that Defendant Riley retaliated against him in violation of his First Amendment rights. At trial the Court heard testimony from Plaintiff, Defendant Riley, and Defendant Bergh. After a careful review of the witnesses' testimony and the evidence introduced at trial, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

## I.

    At all times relevant to this action Plaintiff was incarcerated at the Alger Maximum Correctional Facility ("Alger"), a prison run by the Michigan Department of Corrections

("MDOC") in Munising, Michigan. At all times relevant to this action, Defendant Gerald Riley was the Institutional Chaplain employed by the MDOC at Alger, and Defendant David Bergh was the Warden at Alger.

On May 24, 2005, Plaintiff filed a declaration of religious preference, declaring his religious faith group to be Buddhism. (Ex. 1). Plaintiff subsequently requested a Buddhist or strict vegetarian diet.

Providing special meals to prisoners is more costly than providing one or two standard meals for all prisoners. Accordingly, although every MDOC prison facility offers a vegetarian diet, they do not all offer strict vegetarian diets. Alger does not offer a strict vegetarian diet. Accordingly, if a prisoner at Alger is approved for a strict vegetarian diet, the prisoner must be transferred to Baraga Maximum Correctional Facility ("Baraga"), the only Level V prison in the Upper Peninsula of Michigan that offers a strict vegetarian diet.

Because some prisoners make requests for a religious meal simply to manipulate a transfer to a different prison, the MDOC has established a policy for screening religious diet requests. The process for obtaining approval for a religious diet is governed by MDOC Policy Directive 05.03.150. Policy Directive 05.03.150 provides, in part:

> TT. A prisoner may eat from a religious menu only with approval of the CFA Special Activities Coordinator. Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion. To request approval, the prisoner must submit a written request to the Warden, TRV Manager, or designee, as appropriate, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden, TRV Manager or designee, as appropriate, of a

> decision; the Warden or TRV Manager shall ensure that the prisoner is notified. A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

(Ex. 23, Ex. A, PD 05.03.150.)

At Alger, Warden Bergh designated Chaplain Riley to obtain the relevant information regarding prisoner requests for religious diets. Chaplain Riley has been the chaplain at Alger for thirteen years. During this time he has conducted approximately 400 interviews of prisoners who have requested religious diets. Because Alger is a pork-free facility, many religious diets do not require special accommodation. Requests for special religious diets typically involve requests for a kosher or a Buddhist diet. When Chaplain Riley interviews prisoners about their requests for religious diets he typically asks them to: (1) describe their basic beliefs, (2) explain why the special diet is required, (3) describe what the diet is, (4) describe how the diet differs from the basic prison diet, and (5) describe what foods are prohibited. Chaplain Riley testified that it was his practice to write down the prisoner's answers to the questions and then to read them back to the prisoner to make sure his recommendation to the Warden accurately reflected his interview.

On or about July 8, 2005, Chaplain Riley interviewed Plaintiff concerning Plaintiff's request to be provided a Buddhist diet. Although Chaplain Riley has no personal recollection of his interview of Plaintiff, he wrote down Plaintiff's answers to his questions and memorialized his interview of the Plaintiff in his July 12, 2005, memorandum to Warden Bergh. (Ex. 21.) In that letter Chaplain Riley stated as follows:

> Prisoner Carson #193689 has requested the Buddhist diet.
>
> I interviewed him and asked him to explain the major teachings of his religion. He said, And I quote "Meditation and wisdom."
>
> I asked him why a special diet is required by this religion. He said "Because our beliefs, shall be no killing, no meats or animal bi-products."
>
> I asked how does it differ from food here. He said "The food is served with animals bi-products."
>
> The last question I asked him was what types of foods are allowed. His response was, "Fruits, vegetables and any types of whole wheat."
>
> I then read back to the prisoner his responses to verify accuracy.
>
> I recommend denial of the prisoner's request. He has communicated extremely minimal knowledge about Buddhism and its dietary requirements. If a prisoner was sincere about his faith he would have some knowledge of what he is sincere about. This prisoner did not communicate any such thing.

(Ex. 21.)

Plaintiff did not challenge or refute Chaplain Riley's characterization of this interview. Instead, Plaintiff testified that Chaplain Riley should have considered additional information about Plaintiff's religious beliefs. Plaintiff testified that on June 30, 2005, prior to the interview, he sent a letter to Chaplain Riley, with a copy to Warden Bergh, that included a five-page attachment outlining Plaintiff's religion and the reasons behind his need for a strict vegetarian diet. (Ex. 3.)

The Court does not find Plaintiff's testimony that he sent the document prior to the interview to be credible. Plaintiff did not indicate that he brought this letter to Chaplain Riley's attention at the time of the interview. In addition, Plaintiff's letter is inconsistent

4

with the contemporaneous grievance Plaintiff filed on July 8, 2005. (Ex. 4, 8/1/05 Grievance, LMF-05-07-2125-20e.) In that grievance Plaintiff stated that Chaplain Riley gave him a three question test, and Plaintiff argued that it was unconstitutional to test him as a precondition to receiving his religious diet. Plaintiff did not assert in his grievance that Defendant Riley had failed to consider his written document. The first time there is any reference in the record to Plaintiff's written document is in Plaintiff's August 1, 2005 grievance (Ex. 7), which was submitted after Plaintiff had received Chaplain Riley's notice that his request for a religious diet had been denied.

Defendants deny that Plaintiff sent this document before his interview. Defendants testified that they never saw this document until after Plaintiff filed this lawsuit. The Court finds Defendants' testimony to be credible. Neither Chaplain Riley nor Warden Bergh had any personal recollection of Plaintiff's request to be put on the strict vegetarian diet and neither of them had any incentive to falsify their recollections regarding the letter. Furthermore, Chaplain Riley's characterization of the brief interview he had with Plaintiff would not have made sense had he been in possession of Plaintiff's June 30, 2005, letter.

The Court concludes that Defendants were not in receipt of Plaintiff's five-page document outlining his religious beliefs before they denied Plaintiff's request for a religious diet. Rather, it appears that Plaintiff manufactured the document after the fact to support his claim that he was discriminated against.

On July 12, 2005, Warden Bergh sent a memorandum to Dave Burnett, Special Activities Coordinator, Correctional Facilities Administration, stating that "[b]ased on the attached information supplied by Chaplain Riley, I am recommending denial of the Buddhist diet meal request from the following prisoner: Carson, #193689." Special Activities Coordinator Burnett made the final decision to deny Plaintiff's request for a special religious diet. On July 27, 2005, Chaplain Riley sent a memorandum to Plaintiff to inform him that his request for a Buddhist diet had been processed and denied. (Ex. 2, Ex. C.)

Sometime after the events giving rise to this action, Plaintiff was approved for the strict vegetarian diet and was transferred to Baraga where the strict vegetarian diet is available. Plaintiff complained at trial that even the strict vegetarian diet does not meet his religious needs because the food includes pungent herbs. However, the adequacy of the strict vegetarian diet is not at issue in this case. For purposes of this case the Court is only concerned about the denial of the strict vegetarian diet in July 2005.

## II.

Plaintiff asserts that defendants have violated his right under the First Amendment to free exercise of religion by refusing to provide him a strict vegetarian diet in conformity with his religious beliefs.

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Inmates retain those First Amendment rights, including the right to free exercise of religion, that are

6

not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).

"A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). Purely secular views or personal preferences will not support a Free Exercise Clause claim. *Frazee v. Ill. Employment Sec. Dep't*, 489 U.S. 829, 833 (1989). "Only beliefs rooted in religion are protected by the Free Exercise Clause . . . ." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 713 (1981). "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." *Mosier v. Maynard*, 937 F.2d 1521, 1526 (10th Cir. 1991) (citing *Johnson v. Moore*, 926 F.2d 921, 923 (9th Cir. 1991)); *see also Lovelace v. Lee*, 472 F.3d 174, 208 (4th Cir. 2006) (holding that prisons may ensure that religious accommodation extends only to sincere observers); *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (holding that prison officials may inquire into the sincerity of an inmate requesting kosher meals); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (holding that prison authorities may deny insincere requests for religious meals). In the absence of such an inquiry into the sincerity of the religious beliefs, prisoners would

be free to assert false religious claims that are actually attempts to gain special privileges or to disrupt prison life. *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996).

In inquiring into the sincerity of an inmate's religious beliefs, prison officials should not attempt to evaluate the truth or validity of the beliefs. *United States v. Seeger*, 380 U.S. 163, 184-85 (1965). "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas*, 450 U.S. at 714. Accordingly, the inquiry should focus on whether the beliefs are "truly held" and whether they are "religious in nature." *Mosier*, 937 F.2d at 1526 (quoting *Martinelli v. Dugger*, 817 F.2d 1499, 1504 (11th Cir. 1987)).

Only if the prisoner makes this threshold showing of a sincerely held religious belief will the Court consider "whether the challenged practice of the prison officials infringes on the religious belief;" and "whether the challenged practice of the prison officials furthers some legitimate penological objective." *Kent*, 821 F.2d at 1224-25.

Plaintiff does not deny that he was able to freely choose to practice Buddhism. When Plaintiff changed his religious preference on May 24, 2005, he was not tested or required to explain his choice. He was only interviewed about his beliefs when he requested accommodation in the form of a special diet. The prison is entitled to create some standard to determine whether a prisoner is entitled to a special religious diet. Policy Directive 05.03.150, which requires approval for a religious diet, properly authorizes prison officials

to determine whether a prisoner's asserted dietary requirements stem from religious beliefs that are sincerely held before accommodating the prisoner with a special religious diet.

Plaintiff does not challenge the constitutionality of Policy Directive 05.03.150. Instead, he asserts that Defendant Riley held him to an impermissibly high standard of knowledge about his religion and denied his request for a Buddhist diet merely because he did not have a thorough knowledge of the religion.

Contrary to Plaintiff's assertions, he was not denied a Buddhist diet because he did not have a thorough understanding of the Buddhist religion. He was denied a Buddhist diet because he "communicated extremely minimal knowledge about Buddhism and its dietary requirements." (Ex. 21.) The questions Chaplain Riley asked were not designed to elicit detailed answers or to test a prisoner on difficult or esoteric tenets of his religion. In his interviews Chaplain Riley does not ask for a detailed information about a prisoner's belief system. He merely seeks some understanding of what the prisoner wants and why he wants it. Chaplain Riley's questions are designed to help him determine whether a prisoner has a sincere belief and whether that belief was religious. Knowledge of basic precepts is one way of evaluating the sincerity of a belief. Plaintiff was not able to articulate even a basic understanding of the Buddhist religion or his need for a special diet. Based upon Chaplain Riley's testimony regarding the number of times he has engaged dietary interviews, the nature of the questions he typically asks in these interviews, and the contents of the memo he sent to Warden Bergh regarding his interview with Plaintiff, the Court is satisfied that

Defendant Riley understood the limited scope of his inquiry, and that his interview was properly focused on the sincerity of Plaintiff's beliefs rather than on the extent of his knowledge.

Warden Bergh trusted Chaplain Riley to conduct these interviews fairly, and Chaplain Riley's memo gave him no reason to challenge Chaplain Riley's conclusion that Plaintiff's beliefs were not sincerely held. There was no evidence at trial that either Chaplain Riley or Warden Bergh harbored any animosity towards Buddhist prisoners in general or toward Plaintiff in particular. Based on the evidence presented the Court concludes Defendants at all times acted in good faith and reasonably questioned the sincerity of Plaintiff's asserted religious beliefs.

The Court studied Plaintiff as he testified. It was evident from Plaintiff's words, body language, and demeanor, that Plaintiff's intent from the start was to set up a lawsuit against the prison officials rather than to obtain something he sincerely required for the practice of his religious beliefs. Even today the Court has grave doubts as to whether Plaintiff is sincere in his religious beliefs. Plaintiff's own documentation showed a wide range of diets that are acceptable for Buddhists. For example, the Seeker's Glossary of Buddhism, provides that "[t]he vow, incumbent on all Buddhists, monastic and lay, not to take life, causes them to be vegetarian, though with varying degrees of strictness." (Ex. 14 at 262.) Plaintiff was not able to give any explanation as to why his beliefs required him to adopt the strictest possible diet.

Plaintiff also argued at trial that it was discriminatory to test the sincerity of his religious beliefs because other faiths were not similarly subject to such testing. Specifically, Plaintiff noted that Muslim prisoners were not tested before they were allowed to participate in Ramadan.

Plaintiff presented no evidence of discrimination. Muslim prisoners who participate in Ramadan eat the same diet as the other prisoners, but just eat it at a different time of day. Accordingly, their participation in Ramadan does not involve the preparation of a special diet. Furthermore, although Plaintiff complained that Protestants and Catholics were not tested on the fundamental tenets of their faiths, Plaintiff did not present any evidence that any Protestant or Catholic prisoners had requested a special religious diet. Plaintiff did not identify prisoner or religious group of prisoners who were provided special religious diet without an interview and prior approval pursuant to Policy Directive 05.03.150.

Plaintiff has not met his burden of proof on his claim that Defendants Riley and Bergh violated Plaintiff's right under the First Amendment to free exercise of religion by refusing to provide him a strict vegetarian diet in conformity with his religious beliefs. The Court accordingly finds in favor of Defendants Riley and Bergh on Plaintiff's free exercise claim.

**III.**

Plaintiff also brought a claim against Defendant Riley for retaliation. The elements of a retaliation claim are:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

At trial Plaintiff did not present any testimony on the issue of retaliation, nor did he question Chaplain Riley on the issue of retaliation. Plaintiff did introduce into evidence grievances he filed against Defendant Riley. (Ex. 4, 7/8/05 grievance; Ex. 6, 8/2/05 grievance; Ex. 7, 8/1/05 grievance; Ex. 8, 10/28/05 grievance). The filing of non-frivolous grievances is conduct protected under the First Amendment. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). For purposes of this opinion the Court will assume that Defendant Riley's recommendation that Plaintiff be denied a religious diet is an adverse action that would deter a person of ordinary firmness from continuing to file grievances. Plaintiff did not, however, offer any evidence to suggest that there is a causal connection between his protected conduct and the adverse action. None of the grievances predated Chaplain Riley's interview with Plaintiff. Only one grievance predated Chaplain Riley's July 12, 2005, memorandum to Warden Bergh recommending that Plaintiff's request for a special diet be denied. However, it appears from the contents of Plaintiff's July 8, 2005, grievance that Chaplain Riley had already advised Plaintiff that his request for a strict vegetarian diet was being denied. (Ex. 4) Because none of Plaintiff's protected activity (the filing of grievances) predated Chaplain Riley's determination that

Plaintiff should not be granted the strict vegetarian diet, Plaintiff has failed to prove that Chaplain Riley retaliated against Plaintiff for engaging in protected activity.

Based upon the evidence presented at trial, the Court finds that there was no causal connection between Plaintiff's filing of grievances against Chaplain Riley and Chaplain Riley's recommendation that Plaintiff be denied a strict vegetarian diet. Chaplain Riley made his recommendation based upon Plaintiff's very minimal understanding of Buddhism and its dietary requirements, and his inability to show that his request for a religious diet was based upon a sincere religious belief. The Court finds that Chaplain Riley would have made the same recommendation even if Plaintiff had not filed any grievances against him. Accordingly, the Court finds in favor of Chaplain Riley on Plaintiff's retaliation claim.

For the reasons stated herein, a judgment of no cause of action will be granted in favor Defendants, Chaplain Riley and Warden Bergh.


Dated: August 18, 2009 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE